### SWIFT ELECTRICAL SUPPLY COMPANY, INC., Plaintiff,

#### v.

The TOWNSHIP OF LAKEWOOD, Lakewood Development Corp., Epic Group, Inc., Epic Management Inc., and ABC Corporations 1–50 (fictitious names being corporations, persons or entities intended), Defendants.

#### Epic Management, Inc., Third–Party Plaintiff,

#### v.

Local 400, International Brotherhood of Electrical Workers, AFL–CIO, Local 400 Ibew Employee Benefit Funds, Ace Wire & Cable Co., Inc., Monarch Electric Co., and Cooper Electric Supply Co., Third–Party Defendants.

No. CIV. A. 01–3099(MLC).

United States District Court,
D. New Jersey.

Oct. 9, 2001.

301

Michael Nord, John G. Lynch, Nord & Demaio, East Brunswick, NJ, for Plaintiff.

William F. McEnroe, Pisarri, McEnroe & Careri, Hackensack, NJ, for Epic Group, Inc. and Epic Management, Inc.

Gary A. Carlson, Lynch Martin Kroll, West Orange, NJ, for Local 400 and the Local 400 Funds.

## MEMORANDUM OPINION

COOPER, District Judge.

This matter comes before the Court in response to its Order to Show Cause why the action should not be remanded to state court and on plaintiff's motion to remand. The action was removed to this Court from the Superior Court of New Jersey, Law Division, Ocean County on the basis of federal question jurisdiction. Although the face of the Complaint asserts only state law claims, defendants assert that necessary federal claims were omitted in violation of the well-pleaded complaint rule and that the state law claims are preempted by sections 502(a) and 515 of the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. §§ 1132(a), 1145, and section 301(a) of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185(a). For the reasons expressed below, the Order to Show Cause and plaintiff's motion will be granted.

### BACKGROUND

The parties' dispute arises out of a public project to build a baseball stadium for the Township of Lakewood (the "Project"). (Notice of Removal filed 7–12–01 ("NOR") Ex. A: Compl. filed 5–31–01 ("Compl.") Ct. 1, ¶ 4.) Defendant Epic Management, Inc. worked as the general contractor on the Project for project owners the Township of Lakewood and Lakewood Development Corp. (Compl.Ct.1, ¶¶ 4–5.) Plaintiff claims it furnished and delivered electrical supplies and materials to Adriana Electrical Contractors Corp. ("Adriana"), the

electrical subcontractor working on the project, for which it was never paid.[1] (*Id.* Ct. 1, ¶¶ 6–7.)

Plaintiff filed a civil action against defendants in the Superior Court of New Jersey on May 31, 2001, asserting claims for payment to plaintiff out of the monies due and owing from defendants to Adriana pursuant to the New Jersey Municipal Mechanics' Lien Law ("NJMMLL"), N.J. Stat. Ann. 2A:44–125 *et seq.*, the New Jersey Trust Fund Act, N.J. Stat. Ann. 2A:44–148, (Compl.Cts.1–2), and for failure to issue joint checks to Adriana and plaintiff pursuant to a Joint Party Check Agreement, (Compl.Ct.3). Defendants Epic Group, Inc. and Epic Management, Inc. (collectively "Defendants") removed the action to this Court on July 12, 2001, with the consent of the other named defendants. (*See* NOR.)

On July 26, 2001, the Court issued an Order to Show Cause why the action should not be remanded to state court for lack of federal jurisdiction. (Order to Show Cause filed 7–26–01.) Plaintiff filed a motion to remand the action to state court on the same grounds. (Pl.'s Mot. to Remand filed 7–27–01.) Defendants filed a Third Party Complaint on August 15, 2001, naming as third-party defendants Local 400 IBEW Employee Benefit Trust Funds (the "Funds"), Local 400 International Brotherhood of Electrical Workers, AFL–CIO ("Local 400"), Ace Wire and Cable Company, Inc., Monarch Electric Company, and Cooper Electric Supply Company, (Answer, Countercl. & Third Party Compl. filed 8–15–01.)

## DISCUSSION

Defendants argue that this Court has original federal question jurisdiction over the action and that, had the Complaint been well-pleaded, federal claims would have appeared on its face. (Mem. in Opp. to Pl.'s Mot. for Remand & in Response to Order to Show Cause ("Def.Br.") at 9–10.) Specifically, defendants claim that a municipal mechanics' lien claim asserted by the Funds, whom defendants argue should have been named as a necessary party to the Complaint,[2] (1) is based upon the failure of Adriana to make benefit contributions under a collective bargaining agreement ("CBA"), and (2) constitutes a suit for collection of fringe benefit contributions. (*Id.* at 11–13.) Because the Funds are an employee benefit plan, defendants assert that sections 502(a) and 515 of ERISA, 29 U.S.C. §§ 1132(a), 1145, and section 301(a) of the LMRA, 29 U.S.C. § 185(a), completely preempt the NJMMLL claim and provide this Court with exclusive federal jurisdiction over the action.[3] (*Id.*)

---

1. Adriana is currently a debtor in a Chapter 7 bankruptcy case and could not be named as a defendant in this action. On September 4, 2001, defendants filed a motion for relief from the automatic stay so that Adriana could be joined as a party to this suit. (*See* Def. Reply Br. at 3.)

2. Section 2A:44–139 of the NJMMLL provides that a party bringing an action to enforce a municipal mechanics' lien claim "shall make parties to the action all who have filed claims, the contractor, the subcontractor referred to in the claims, and the public agency with whom the contract was made." Defendants allege that the Funds have asserted a claim to enforce a municipal mechanics' lien on the Project, making them a necessary party to the action. (Def. Br. at 5–6.)

3. While arguing for removal based on the doctrine of complete preemption, defendants state in their reply brief,

 we are not contending that whatever rights Local 400 and the Benefits Funds may have to pursue a claim under the Municipal Mechanics' Lien Law are pre-empted by LMRA and ERISA, but rather that the Federal District Court has exclusive jurisdiction over the claims relating to a breach of a collective bargaining agreement and failure to make fringe benefit contributions.

Plaintiff argues that the Funds are not a necessary party to the action because they lack standing as claimants under the NJMMLL, the New Jersey Trust Fund Act, and the Bond Act, N.J. Stat. Ann. § 2A:44–143 *et seq.* (Mem. in Supp. of Pl.'s Motion for Remand ("Pl.Br.") at 5–9.) Specifically, plaintiff claims that the Funds do not qualify as a party entitled to payment within the meanings of these statutes and thus, their asserted liens are null and void. (*Id.*) The Funds, they argue, are barred from participating in the action and, thus, no federal claims exist. (*Id.*)

Local 400 and the Funds assert that the causes of action in the Complaint do not arise under federal law and that the doctrine of complete preemption does not apply to an action in which a labor organization or employee benefit plan seeks to enforce claims under the NJMMLL. (Response of Third–Party Defs. to Order to Show Cause ("Funds Br.") at 2–4.) They dispute plaintiff's contention that the Funds are not lien claimants within the meaning of the NJMMLL. (*Id.* at 4–5.)

## I. *Federal Jurisdiction and the Well Pleaded Complaint Rule*

An action filed in a state court may be removed to a federal district court only if the federal court has original jurisdiction over the action. 28 U.S.C. § 1441(a). A federal court has original jurisdiction over diversity and federal question jurisdiction cases. *See* 28 U.S.C. §§ 1331, 1332; *Caterpillar, Inc. v. Williams,* 482 U.S. 386, 392, 107 S.Ct. 2425, 96 L.Ed.2d 318 (1987). A district court has original federal question jurisdiction, the type of jurisdiction alleged in this case, over all civil actions

"arising under" the Constitution, laws, or treaties of the United States. 28 U.S.C. § 1331.

 Under the "well-pleaded complaint rule," a cause of action arises under federal law only · if a federal question is presented on the face of the plaintiff's properly pleaded complaint. *Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for So. Cal.,* 463 U.S. 1, 6, 9–12, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983); *Louisville & Nat'l R. Co. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Dukes v. U.S. Healthcare, Inc.,* 57 F.3d 350, 353 (3d Cir.1995). A federal defense to a state law cause of action is not sufficient justification for removal to federal court. *Dukes,* 57 F.3d at 353 (citing *Gully v. First Nat'l Bank,* 299 U.S. 109, 115–18, 57 S.Ct. 96, 81 L.Ed. 70 (1936)). A plaintiff may choose to forgo federal claims to avoid federal jurisdiction, however, a plaintiff cannot avoid federal jurisdiction by omitting *necessary* federal claims from the complaint. *See Franchise Tax Bd.,* 463 U.S. at 22, 103 S.Ct. 2841.

 The NJMMLL provides that a party bringing an action to enforce a municipal mechanics' lien claim "shall make parties to the action all who have filed claims" against the same defendant. N.J. Stat. Ann. § 2A:44–139. Defendants allege that Local 400 and the Funds are two of several parties that have asserted liens against the defendants to this action and thus are necessary parties that should have been included in the Complaint. (Def. Br. at 9–10.) We agree that any parties asserting mechanics' liens against the defendants to

(Reply Br. at 8.) As discussed below, the doctrine of complete preemption does not merely confer exclusive federal jurisdiction. If plaintiff's state law claims were completely preempted by ERISA or the LMRA, the state law claims would be entirely displaced by the

federal statutes and the suit would be deemed to be purely a creature of federal law. *See Franchise Tax Bd. of the State of Cal. v. Constr. Laborers Vacation Trust for So. Cal.,* 463 U.S. 1, 23, 103 S.Ct. 2841, 77 L.Ed.2d 420 (1983).

this action should have been named as parties to the suit.

 Defendants further argue that, because the lien asserted by the Funds and Local 400 is based on Adriana's alleged failure to make contributions to an ERISA plan, there are necessary federal claims that should have appeared on the face of the Complaint. (*Id.*) Here we disagree. Nothing suggests that the Funds and Local 400, or any of the other parties that have asserted liens against Defendants, have asserted direct claims for failure to contribute to benefit plans pursuant to the CBA. The defendants to this action are not even parties to the CBA. The cause of action pleaded in the Complaint is to enforce a mechanics' lien under state law, not a direct action for rights pursuant to the CBA. Because no party is asserting federal claims, no federal claims need appear in the Complaint. Plaintiff and the other lien holders, as masters of the Complaint, may have chosen not to assert federal claims and to rely solely on the NJMMLL instead. The state law claims are entirely separate, and no necessary federal claims were omitted from the Complaint such that federal questions can be deemed to have appeared in the Complaint. Therefore, unless some exception applies, removal was not proper under the well-pleaded complaint rule.

## II. *The Complete Preemption Exception*

 Federal preemption is typically a federal defense to a plaintiff's suit, and as a defense, does not appear on the face of a well-pleaded complaint. Accordingly, the defense of preemption does not authorize removal to federal court. *Metro. Life Ins. Co. v. Taylor,* 481 U.S. 58, 63, 107 S.Ct. 1542, 95 L.Ed.2d 55 (1987) (citing *Gully,* 299 U.S. 109, 57 S.Ct. 96, 81 L.Ed. 70; *Caterpillar,* 482 U.S. at 398, 107 S.Ct. 2425; *Dukes,* 57 F.3d at 353–54). The

Supreme Court, however, has recognized "complete preemption" as an exception to the well-pleaded complaint rule under which "Congress may so completely preempt a particular area that any civil complaint raising this select group of claims is necessarily federal in character." *Metro. Life,* 481 U.S. at 63–64, 107 S.Ct. 1542.

> Complete preemption applies when the pre-emptive force of [the federal statutory provision] is so powerful as to displace entirely any state cause of action [addressed by the federal statute]. Any such suit is purely a creature of federal law, notwithstanding the fact that state law would provide a cause of action in the absence of [the federal provision].

*Dukes,* 57 F.3d at 354 (quoting *Franchise Tax Bd.,* 463 U.S. at 23, 103 S.Ct. 2841 (alterations in original)). The Court has recognized that Congress intended the complete preemption doctrine to apply to state law claims that fall within the scope of section 301 of the LMRA and section 502 of ERISA. *Id.* (citing *Avco Corp. v. Machinists,* 390 U.S. 557, 88 S.Ct. 1235, 20 L.Ed.2d 126 (1968); *Metro. Life,* 481 U.S. at 66, 107 S.Ct. 1542).

### A. *ERISA Preemption*

 Section 514(a) of ERISA, defining the reach of that statute's preemption, provides that ERISA shall preempt "any and all state laws insofar as they may now or hereinafter relate to any employee benefit plan" under ERISA. *See* 29 U.S.C. § 1144(a); *see also Ragan v. Tri–County Excavating, Inc.,* 62 F.3d 501, 510 (3d Cir.1995) (quoting *Mackey v. Lanier Collection Agency & Serv., Inc.,* 486 U.S. 825, 829, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988)). Preemption applies when a state law "refers to" ERISA plans in that the state law "acts immediately and exclusively upon ERISA plans" or when "the existence of ERISA plans is essential to the

[state] law's operation." *Bellemead Dev. Corp. v. N.J. State Council of Carpenters Benefit Funds,* 11 F.Supp.2d 500, 509 (D.N.J.1998) (quoting *Cal. Div. of Labor Standards Enforcement v. Dillingham Constr., N.A., Inc.,* 519 U.S. 316, 325, 117 S.Ct. 832, 136 L.Ed.2d 791 (1997)). "Also, a state law is preempted if it has a 'connection with' an employee plan in the sense that it 'mandate[s] employee benefit structures or their administration' or 'provid[es] alternative enforcement mechanisms.'" *Id.* (quoting *N.Y. Conference of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.,* 514 U.S. 645, 658, 115 S.Ct. 1671, 131 L.Ed.2d 695 (1995)).

 Aside from those areas, there is a strong presumption against preemption pursuant to section 514(a). *See De Buono v. NYSA–ILA Med. and Clinical Servs. Fund,* 520 U.S. 806, 813, 117 S.Ct. 1747, 138 L.Ed.2d 21 (1997) (stating that analysis under section 514(a) starts with "presumption that Congress does not intend to supplant state law"); *Travelers,* 514 U.S. at 654, 115 S.Ct. 1671 (same); *Cipollone v. Liggett Group, Inc.,* 505 U.S. 504, 516, 112 S.Ct. 2608, 120 L.Ed.2d 407 (1992); *Bellemead,* 11 F.Supp.2d at 508–09 (citing cases). There is no ERISA preemption "if the state law has only a 'tenuous, remote, or peripheral' connection with covered plans 'as is the case with many laws of general applicability.'" *Dist. of Columbia v. Greater Wash. Bd. of Trade,* 506 U.S. 125, 130 n. 1, 113 S.Ct. 580, 121 L.Ed.2d 513 (1992) (quoting *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983); *Mackey,* 486 U.S. at 830–38 & n. 12, 108 S.Ct. 2182). State laws of general applicability imposing only some burden on the administration of ERISA plans that do not force an ERISA plan to "restrict its choice of insurers or to adopt certain substantive coverage" should not be superseded.

*Bellemead,* 11 F.Supp.2d at 509 (citing *De Buono,* 520 U.S. at 816 & n. 16, 117 S.Ct. 1747).

## 1. *"Refers To" Inquiry*

 As discussed above, a state law "refers to an ERISA plan" if it expressly imposes requirements on ERISA plans, it "acts immediately and exclusively upon ERISA plans," or when "the existence of ERISA plans is essential to the law's operation." *Bellemead,* 11 F.Supp.2d at 509 (quoting *Dillingham,* 519 U.S. at 325, 117 S.Ct. 832); *Mackey,* 486 U.S. at 829, 108 S.Ct. 2182; *United Wire, Metal & Mach. Health & Welfare Fund v. Morristown Mem'l Hosp.,* 995 F.2d 1179, 1192 (3d Cir.), *cert. denied,* 510 U.S. 1031, 114 S.Ct. 651, 126 L.Ed.2d 608 (1993); *Bricklayers and Allied Craftsmen Intern. Union Local 33 Benefit Funds v. Am.'s Marble Source, Inc.,* 950 F.2d 114, 117 (3d Cir.1991). As the Supreme Court set out in *Mackey,* statutes that "single out" ERISA employee welfare benefit plans are preempted while state statutes that are more general in nature are not. 486 U.S. at 830–38, 108 S.Ct. 2182.

 The NJMML states in pertinent part,

a. Any person who, as laborer, mechanic, materialman, merchant or trader, or subcontractor, in pursuance of or conformity with the terms of any contract for any public improvement made between any person and a public agency as defined in N.J.S. 2A:44–126 and authorized by law to make contracts for the making of public improvements, performs any labor or furnishes any materials, including the furnishing of oil, gasoline or lubricants and vehicle use, toward the performance or completion of any such contract, shall, on complying with the provisions of subsection b. of N.J.S. 2A:44–128, N.J.S. 2A:44–132

and N.J.S. 2A:44–133, have a lien for the value of the labor or materials, or both, upon the moneys due or to grow due under the contract and in the control of the public agency, to the full value of the claim or demand. The lien may be filed and, to the extent of the amount due or to grow due under the contract, shall become an absolute lien to the full value of the labor performed or materials furnished in favor of every person and his representatives and assigns employed by or furnishing materials to the contractor or subcontractor. No public agency shall be required to pay a greater amount than the contract price of the labor performed and materials furnished or the value thereof when no specific contract is made with respect to the same by the contractor or subcontractor, respectively.

N.J. Stat. Ann. § 2A:44–128(a). The NJMMLL is a neutral, generic statute with no reference to ERISA or to employee benefit plans. *See* N.J. Stat. Ann. § 2A:44–125 *et seq.* The state law was not specifically designed to affect ERISA plans, nor does it single out ERISA plans for special treatment or otherwise attempt to create rights or duties specific to ERISA plans. The NJMMLL does not "refer to" ERISA or an ERISA plan. *Cf. Bellemead,* 11 F.Supp.2d at 509–10 (concluding New Jersey's Construction Lien Law, N.J. Stat. Ann. § 2A:44A–1 *et seq.,* does not refer to ERISA plan and is not preempted by ERISA).

2. *"Connection With" or "Conflicts With" Inquiry*

■■■■■ A state law also is preempted if it has a "connection with" or "conflicts with" an ERISA employee plan in that it "mandate[s] employee benefit structures or their administration or provid[es] alternative enforcement mechanisms." *Bellemead,* 11 F.Supp.2d at 509 (quoting *Trav-*

*elers,* 514 U.S. at 658, 115 S.Ct. 1671). The civil enforcement remedies in ERISA are meant to be exclusive. *See Ragan v. Tri–County Excavating, Inc.,* 62 F.3d 501, 512 (3d Cir.1995) (citing *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 51, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987)). A state law that directly conflicts with a cause of action provided for by ERISA is preempted. *Id.* (citing *Ingersoll–Rand v. McClendon,* 498 U.S. 133, 142, 111 S.Ct. 478, 112 L.Ed.2d 474 (1990)).

■■■ As the Third Circuit has acknowledged, sections 502(a) and 515 of ERISA, 29 U.S.C. §§ 1132(a), 1145, "provide a cause of action and remedies for an *employer's* failure to fulfill its obligations to make pension or welfare fund contributions pursuant to a plan or collective bargaining agreement." *Id.* (quotation omitted). *Ragan* thus indicates that, without a cause of action asserted against an employer, there is no conflict preemption under ERISA. *Id.; see also Bellemead,* 11 F.Supp.2d at 515 (analyzing *Ragan*). ERISA defines "employer" as "any person acting directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." 29 U.S.C. § 1002(5).

■■■ Defendants were not signatories to the CBA between Adriana and the Funds. As general contractors and owners of the Project, they did not "act[ ] directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan." *See id.* Defendants in no way served as Adriana's agent or assumed its responsibilities concerning an ERISA plan. *See Ragan,* 62 F.3d at 512; *Bellemead,* 11 F.Supp.2d at 515. Following the Third Circuit's reasoning in *Ragan,* there is no conflict preemption under ERISA. *Ragan,* 62 F.3d at 512 (finding no preemption of Pennsylvania

payment bond); *Bellemead,* 11 F.Supp.2d at 515 (finding no preemption of New Jersey construction lien law). *See also Hawai'i Laborers' Trust Funds v. Maui Prince Hotel,* 81 Hawai'i 487, 918 P.2d 1143 (1996) (finding no preemption of Hawaii mechanic lien law).

Following the reasoning and analysis set out by the Third Circuit in *Ragan* and the District Court of New Jersey in *Bellemead,* we conclude the NJMMLL is not completely preempted by ERISA. The NJMMLL is a law of general applicability that does not refer to ERISA nor fall within the scope of the civil enforcement remedies of ERISA. Under ERISA, the complete preemption exception to the well-pleaded complaint rule does not apply to plaintiff's Complaint.

### B. *LMRA Preemption*

 Defendants assert that the LMRA preempts the NJMMLL claims as they constitute a suit for collection of fringe benefit contributions. (Def. Br. at 11–12.) Section 301(a) of the LMRA provides:

Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties.

29 U.S.C. § 185(a).

The Seventh Circuit recently considered whether a claim based on Indiana's mechanic's lien law was preempted by section 301 of the LMRA. *In re Bentz Metal Prods. Co.,* 253 F.3d 283 (2001). In *Bentz,* employees filed liens against their bankrupt employer seeking to secure unpaid earned wages owed to them under a collec-

tive bargaining agreement. Based on its interpretation of Supreme Court precedents, the circuit court held that the state law claim under the mechanic's lien law was not preempted by the LMRA, stating that "a state law claim is not preempted if it does not require interpretation of the CBA even if it may require reference to the CBA." *Id.* at 285 (examining *Lingle v. Norge Div. of Magic Chef, Inc.,* 486 U.S. 399, 108 S.Ct. 1877, 100 L.Ed.2d 410 (1988) (holding state tort claim of retaliatory discharge in alleged violation of CBA not preempted by LMRA); *Livadas v. Bradshaw,* 512 U.S. 107, 114 S.Ct. 2068, 129 L.Ed.2d 93 (1994) (holding claim based on state wage payment penalty statute not preempted even though amount of claim could be determined by CBA)).

The court quoted the following passage from the Supreme Court's decision in *Lingle,* to sum up its reasoning:

A collective-bargaining agreement may, of course, contain information such as rate of pay and other economic benefits that might be helpful in determining the damages to which a worker prevailing in a state-law suit is entitled. Although federal law would govern the interpretation of the agreement to determine the proper damages, the underlying state-law claim, not otherwise preempted, would stand. Thus, as a general proposition, a state-law claim may depend for its resolution upon both the interpretation of a collective-bargaining agreement and a separate state-law analysis that does not turn on the agreement. *In such a case, federal law would govern the interpretation of the agreement, but the separate state-law analysis would not be thereby pre-empted.* As we said in *Allis–Chalmers Corp. v. Lueck,* 471 U.S. at 211, 105 S.Ct. 1904, 85 L.Ed.2d 206, "not every dispute ... tangentially involving a provision of a collective-bar-

gaining agreement, is pre-empted by § 301...."

*Id.* (quoting *Lingle,* 486 U.S at 413 n. 12, 108 S.Ct. 1877) (emphasis in *Bentz* opinion). For preemption to exist, the court concluded, resolution of a state law claim must require interpretation of a CBA. *Id.* at 289. We deem this to be sound reasoning based on reasonable interpretation of the Supreme Court precedents.

The claims at issue arise under the NJMMLL and the New Jersey Trust Fund Act. There is no claim based directly on the CBA. Nothing suggests that the CBA between Adriana and the Funds needs to be interpreted in order to resolve these state law claims. There is no issue of contractual dispute that will require interpretation of the CBA's terms. Although the CBA may need to be consulted to determine the underlying amounts owed to the Funds, there is no evidence that these amounts are contested or that there is any other conflict between the parties concerning the monies owed other than the fact that they have not yet been paid by the now-bankrupt Adriana.[4] Although the CBA is tangentially involved, the core dispute before us is a separate state claim to enforce a lien under the NJMMLL. The defendants to the action were not a party to the CBA, and the claim to enforce the lien does not rely upon the CBA for its existence. *See Bentz,* 253 F.3d at 289. The analysis of the state law claims is separate from that of any issues of dispute arising between the parties to the CBA arising directly out of that agreement. *See Bentz,* 253 F.3d at 288. The state law claims are not preempted by the LMRA.

---

**4.** If interpretation of, rather than reference to, the CBA were necessary to resolve the state law claims, such as to determine entitlement to monies or the exact amounts due under the CBA, preemption would apply as to those determinations. The mechanics' lien, however, is a separate claim not dependent on interpretation of the CBA for its existence. *See Bentz,* 253 F.3d at 289.

## CONCLUSION

For the reasons discussed above, the Court concludes that the Complaint properly asserts only state claims that are not preempted by federal law. No necessary federal causes of action appear on the face of the well-pleaded Complaint. This Court does not have federal question jurisdiction over the action and no other basis for federal jurisdiction applies. Accordingly, the Complaint will be remanded to the Superior Court of New Jersey, Law Division, Ocean County. An appropriate Order accompanies this Memorandum.